UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LAPONTE, | No.  2:24-cv-2808 CSK P |
| Plaintiff, | |
| v. | ORDER |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel.  Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and is proceeding in forma pauperis.  This proceeding was referred to this Court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302.  Plaintiff's amended complaint is now before the Court.  As discussed below, plaintiff's amended complaint is dismissed with leave to amend.

I.      SCREENING STANDARDS

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

///

1

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

II. PLAINTIFF'S AMENDED COMPLAINT

Initially, plaintiff objects to the imposition of the Court's filing fee, and again attempts to pursue this case as a class action. (ECF No. 29.) Plaintiff states that he:

> challenges the very fabric of both statutory law's Penal Code Section 1168(a) and (b), including PC § 1170, which as intertwined law are unconstitutional, subjecting criminal defendants unknowingly to indeterminate terms, giving jurisdiction to an unlawful panel of appointed tyrants known as the Board of Parole Hearings who, having been appointed by the Governor of the State of California GAVIN NEWSOM, in direct violation of statutory law PC § 5057(4) ("The selection of persons and their appointment by the Governor and confirmation by the Senate shall reflect as nearly as possible a cross section of the racial, sexual orientation, gender identity, economic, and geographic features of the population of the State.").

(ECF No. 29 at 2.) Plaintiff contends that Board of Parole Hearings (hereafter "Board"), is composed of "CDCR employees, career guards, wardens, and employees of the Inspector General," which does not represent a cross-section of California's population, which results in a

"Homeboy Network," who manipulate statutory law, and guarantees "oppression and systemic racial denials of parole. (Id.)

Plaintiff states that on April 2, 2018, the California Supreme Court relieved the Board of its obligations to calculate base and adjusted base terms for inmates serving a sentence of life with the possibility of parole. In re Butler, 4 Cal. 5th 728 (2018). In response, plaintiff alleges the Executive Officer Jennifer Shaffer "repealed all parole guidelines" which calculated terms for prisoners serving indeterminate terms, and also repealed the mitigating and aggravating factors used to consider parole suitability. (ECF No. 29 at 3.) Plaintiff contends the repeal of these guidelines turned all terms of 25 or 15 years to life with the possibility of parole into sentences of life without the possibility of parole, subjecting prisoners to systemic and racial deprivation with no guidelines to make appropriate parole determinations. (Id.)

Further, plaintiff states that even if the Board set the base and adjusted base terms prior to April 2, 2018, those dates mean nothing because the Board must still find these prisoners suitable for parole, citing the Ex Post Facto Clause. (Id.) On September 13, 2016, plaintiff claims his term was fixed at 12 years by using guidelines in effect prior to 1977, even though plaintiff received an Indeterminate Sentencing Law ("ISL") term on March 21, 1990. (Id. (citing id. at 23-26).) Plaintiff contends he has now served his 12 year term three times over as he is now in his 35th year in custody for a non-murder conviction. (ECF No. 29 at 4.) Plaintiff argues that § 3041(c) should have been applied to plaintiff on September 13, 2016, because the trial court sentenced plaintiff to an ISL term which was repealed September 1, 1976, and implemented the sentence on March 1, 1990 under DSL PC § 1170. (Id. at 5 (citing id. at 23-26).) Plaintiff maintains that "had the superior court sentenced him to a determinate and indeterminate term plaintiff would have no legal argument," but that is not what the court did. (Id.)

Plaintiff argues that once the Board fixed his base and adjusted term that expired on April 26, 2000, neither the Board nor the CDCR had jurisdiction to keep plaintiff in custody because there remained no administrative guidelines for parole, having been repealed as of April 1, 2018. (Id. at 7.) Plaintiff contends he does not have to be found suitable for parole if his legal term, fixed on September 13, 2016, legally expired pursuant to California Penal Code §§ 3041(c) and

3

1170.2.  (Id. (citing id. at 23.)  Plaintiff points out that he has not received a determinate term release date calculation because he does not have DSL term, and his ISL term expired on April 26, 2000, pursuant to California Penal Code §§ 3041(c) and 1170.2.  (Id. at 8.)

As relief, plaintiff seeks a jury trial and asks the Court to reinstate his original complaint as to all persons serving ISL terms are being unjustly persecuted by a rogue agency who has no jurisdiction over their unlawful sentences pursuant to the ISL and DSL being unauthorized by statute.  (Id.)

III.   PLAINTIFF'S OBJECTION RE FILING FEE

Plaintiff objects to being assessed the Court's filing fee.  (ECF No. 29 at 1.)  Prisoners filing civil rights complaints in federal court are required to pay a filing fee of $350.00 plus the $55.00 administrative fee.  See 28 U.S.C. §§ 1914(a), 1915(a).  If leave to file in forma pauperis is granted, the prisoner is still required to pay the filing fee but is allowed to pay it in installments.  Litigants proceeding in forma pauperis are not required to pay the $55.00 administrative fee.  After plaintiff was granted in forma pauperis status, plaintiff was informed of this assessment in the Court's initial screening order, as well as the initial screening order.  (ECF Nos. 25 at 1-2, 26.)  Plaintiff's objection is overruled.

IV.   PUTATIVE CLASS ACTION

Plaintiff seeks reinstatement of this case as a class action, arguing that all prisoners serving ISL terms are being unjustly persecuted by a rogue agency which has no jurisdiction over their unlawful sentences pursuant to the ISL and DSL being unauthorized by statute.  (ECF No. 29 at 2, 8.)

As the Court explained in the initial screening order, as a non-lawyer and a prisoner, proceeding without counsel, plaintiff cannot represent the interests of a class.  (ECF No. 25 at 4 (citing McShane v. United States, 366 F.2d 286, 288 (9th Cir. 1966); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975)).  Plaintiff's request to reinstate this action as a class action is denied, and he is required to file a second amended complaint raising only claims personal to plaintiff.  To assist plaintiff in drafting any second amended complaint, the Court next addresses the arguments in plaintiff's amended complaint that are unavailing.

V.   CLAIMS RE PLAINTIFF'S SENTENCE AND PAROLE

   A.   Underlying Facts

Court records reflect that on March 21, 1990, in the Los Angeles County Superior Court, plaintiff entered a plea of guilty to kidnapping/robbery in violation of California Penal Code § 209(b) (Count 1), false imprisonment (Count 2), assault with a firearm (Count 3), and second degree robbery (Count 4), and admitted to sentencing enhancement allegations as to Counts 2-4 that he used a firearm in the commission of those crimes. (ECF No. 29 at 33); Laponte v. Haviland, No. CIV S-09-0570 MCE DAD (E.D. Cal. Dec.13, 2010) (ECF No. 28 at 1-2).[1] Plaintiff was sentenced to life in prison with the possibility of parole (Count 1), plus a two-year term (Count 2), the execution of which was stayed, and five-year and two-year terms of imprisonment (Counts 3, 4) to be served concurrently. Id. On May 10, 2017, plaintiff's motion to modify his sentence was granted, and the sentences imposed as to Counts 3 and 4 were stayed pursuant to California Penal Code § 654. (ECF No. 29 at 33.) The November 16, 2017 abstract of judgment confirms these modifications, as well as plaintiff's kidnapping/robbery conviction, with a sentence of life with the possibility of parole. (ECF No. 29 at 35-38.)

Plaintiff has challenged the denial of parole on multiple occasions. For example, in 2007, plaintiff challenged the 2005 denial of release on parole by the Board. Laponte v. Kane, 2:06-cv-1555 PA AJW (C.D. Cal. Apr. 13, 2007). In 2009, plaintiff challenged the 2007 denial of release on parole by the Board. Laponte v. Haviland, No. CIV S-09-0570 MCE DAD (E.D. Cal. Dec.13, 2010). In 2012, plaintiff challenged the 2009 denial of release on parole by the Board. Laponte v. Cate, 2:12-cv-8264 PA AJW (C.D. Cal. Oct. 16, 2012) (habeas petition challenging 2009 denial of parole denied, including claim that application of Marsy's Law[2] violated the Ex Post

---

[1] A court may take judicial notice of court records. See, e.g., Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n.2 (9th Cir. 2002) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal quotation omitted).

[2] Proposition 9, the "Victims' Bill of Rights Act of 2008: 'Marsy's Law,' " was passed by California voters in 2008 and increased the time periods between parole hearings. See Gilman v. Schwarzenegger, 638 F.3d 1101, 1103-04 (9th Cir. 2011).

Facto Clause denied). All of these parole challenges were denied. Records from the California Department of Corrections and Rehabilitation ("CDCR") show the following:[3]

- On October 21, 2019, plaintiff's parole suitability hearing was postponed.
- On April 10, 2020, plaintiff was denied parole for three years.
- On March 29, 2023, plaintiff was denied parole for three years.
- On March 6, 2024, administrative review to advance plaintiff's next parole suitability hearing date was denied.
- A tentative date for plaintiff's next parole suitability hearing is to be set in March 2026.

B. Plaintiff's Arguments re Sentence and Parole Unavailing

In his amended complaint, plaintiff objects that the Board keeps stating that plaintiff was convicted of kidnap/ransom, and argues that this is not true because kidnap/ransom carries a term of life without parole ("LWOP"), and if plaintiff were serving an LWOP term, "he could not argue anything." (ECF No. 29 at 6.) Plaintiff alleges the Board "elevated plaintiff's criminal conviction to a different conviction," because "the Board could not have used 15 C.C.R. § 2282(c) to set plaintiff's base and adjusted base term because kidnap/ransom is not even part of the regulations." (Id. (citing id. at 23).) Court records confirm that plaintiff was charged with, pled guilty to, and was sentenced to kidnapping in violation of California Penal Code § 209(b). Laponte v. Haviland, No. CIV S-09-0570 MCE DAD (E.D. Cal. Dec.13, 2010) (ECF No. 1 at 27, 34, 45-47, 49-50). Indeed, at plaintiff's March 21, 1990 change of plea hearing, the judge explained that the People would amend the charge from California Penal Code § 209A, which carried an LWOP term, to § 209B, which carried a sentence of life with the possibility of parole.

---

[3] This information was obtained from the CDCR Inmate Locator website (accessed Sept. 12, 2025). The Court may take judicial notice of public records available on online inmate locators. See United States v. Basher, 629 F.3d 1161, 1165 (9th Cir. 2011) (taking judicial notice of Bureau of Prisons' inmate locator available to the public); see also Foley v. Martz, 2018 WL 5111998, at *1 (S.D. Cal. Oct. 19, 2018) (taking judicial notice of CDCR's inmate locator). Plaintiff also provided a copy of the February 24, 2021 letter from the Board of Parole Hearings confirming plaintiff was denied parole for three years on April 10, 2020, and that his October 25, 2020 petition to advance was denied on November 17, 2020. (ECF No. 29 at 21.)

Id. (ECF No. 1 at 40-41). The November 16, 2017 abstract of judgment confirms plaintiff was convicted of kidnapping/robbery. (ECF No. 29 at 37.) Thus, plaintiff's argument that the Board "elevated plaintiff's criminal conviction to a different conviction" is unavailing, because even if the Board erroneously identified plaintiff's conviction as kidnapping/ransom, plaintiff confirms the Board used 15 C.C.R. § 2282(c) to set plaintiff's base and adjusted base terms. (Id. (citing id. at 23).) In any event, the Board was subsequently relieved of the requirement to calculate base terms and adjusted base terms. Butler, 4 Cal. 5th 728 (2018). Thus, to the extent any error was committed in calculating plaintiff's minimum eligible parole date, such claim is moot under Butler, and is of no consequence because plaintiff has not been found suitable for parole.

Further, plaintiff is mistaken that the setting of base or adjusted base terms constitutes the maximum time plaintiff may be incarcerated. (ECF No. 29 at 4.) "The term 'minimum eligible parole release date' appears in [California Penal Code] section 3041 to describe the date before which the board must meet to set an actual parole release date for a prisoner." In re Dayan, 231 Cal. App. 3d 184, 186 (Ct. App. 1991). Contrary to plaintiff's arguments, the setting of these base or adjusted base terms do not represent the maximum period of time a prisoner can be incarcerated. (Id.)

In addition, although plaintiff claims he was sentenced under the ISL, plaintiff acknowledges he was sentenced in 1990, after the ISL was repealed on July 1, 1977. See generally In re Dannenberg, 34 Cal.4th 1061, 1077-78 (Cal.), cert. denied, 546 U.S. 844 (2005); (ECF No. 29 at 5.) On July 1, 1977, the Uniform Determinate Sentencing Act of 1976 ("DSL") went into effect. Id. The Adult Authority was abolished and replaced by the Board. Cal. Penal Code § 5078. Because plaintiff was sentenced after the ISL was repealed, the Board is not required to apply ISL parole procedures. See Murphy v. Espinoza, 401 F. Supp. 2d 1048, 1055 (C.D. Cal. 2005) (a suitability for parole finding is "a prerequisite for the determination of a 'base term' and the calculation of a parole date."); Dannenberg, 34 Cal. 4th at 1079-80. While plaintiff is serving an indeterminate term of life in prison with the possibility of parole, and at one point the Board set minimum eligible parole dates (ECF No. 29 at 23-26), the Board has not yet found plaintiff suitable for parole. "In other words, absent a determination of parole suitability by the

1  [Board], there is no 'base term.'" Murphy, 401 F. Supp.2d at 1055.

2  Importantly, the judge advised plaintiff at his 1990 plea hearing that the Board will set plaintiff's specific sentence, "[a]nd it varies, depending on the facts of each case and depending on how you conduct yourself in the Department of Corrections. So it's very difficult for anybody to be able to tell you exactly how much time you're going to have to serve." Laponte v. Haviland, No. CIV S-09-0570 MCE DAD (E.D. Cal. Dec.13, 2010) (ECF No. 1 at 40). When asked if he understood, plaintiff responded in the affirmative. (Id.)

Despite plaintiff's arguments to the contrary, under California law, a life prisoner must first be found suitable for parole before a parole date is set. See In Re Stanworth, 33 Cal. 3d 176, 183, 187 Cal. Rptr. 783 (Cal. 1982). Where, as here, the life prisoner has not been found suitable for parole, there is no obligation to set a parole release date. See generally Dannenberg, 34 Cal.4th 1061, 1070-71 (Cal.), cert. denied, 546 U.S. 844 (2005). Here, the parole authority has not reached the point where it needs to fix a term and set a parole release date because plaintiff has not been found suitable for parole.

The Court notes plaintiff's concern about the length of his incarceration as a life term prisoner, and such concern has been addressed multiple times by the California Supreme Court. In re Palmer, 10 Cal. 5th 959, 969-71 (2021) (discussing multiple cases expressing concerns over failing to set a firm release date for life term prisoners). In Palmer, the court also cited the Board's concern that its "'paramount consideration' in making release determinations based on whether the inmate currently posed a threat to public," In re Lawrence, 44 Cal. 4th 1181, 1210 (2008), but found that "life-top inmates denied release on parole may bring their constitutional challenges directly to court." Palmer, 10 Cal. 5th at 970. In Palmer, the California Supreme Court recognized that a lawfully imposed indeterminate sentence may become excessive under the California Constitution due to repeated denials of parole. Id. at 980. While both the United States Constitution and the California Constitution protect against cruel and unusual punishment, Palmer was decided solely under the California Constitution and not on Eighth Amendment grounds. See Palmer, 10 Cal. 5th at 968 n.2; see also Hernandez v. Hill, 2022 WL 1063526, at *4 (C.D. Cal. Feb. 10, 2022) (finding "any challenge to [the] sentence under Palmer is not

8

cognizable on federal habeas review because such a claim would necessarily be based only on a purported state-law error"), report and recommendation adopted, 2022 WL 1062057 (C.D. Cal. Apr. 8, 2022). Because plaintiff is not entitled to relief under the Eighth Amendment, if plaintiff intends to seek relief under Palmer, plaintiff must seek relief in state court.

VI.     PAROLE BOARD COMPOSITION

Finally, plaintiff contends the Board's appointment process violates statutory requirements because it is not a cross-section of the population, but appoints only career employees of the California Department of Corrections and Rehabilitation and the Inspector General, creating a "Homeboy Network," and leads to systemic and racial oppression. (ECF No. 29 at 2, 3.)

To state a claim under § 1983, a plaintiff must demonstrate: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation. See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978). That is, plaintiff may not sue any official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The requisite causal connection between a supervisor's wrongful conduct and the violation of the prisoner's constitutional rights can be established in a number of ways, including by demonstrating that a supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates was a cause of plaintiff's injury. Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011).

Plaintiff's broad claims of systemic and racial oppression fail to state a cognizable civil rights claim. Plaintiff's generalized challenges fail to provide a nexus to a constitutional deprivation personally suffered by plaintiff. Plaintiff fails to set forth specific, non-conclusory facts showing unconstitutional acts by a named defendant that caused plaintiff to suffer an

individual deprivation.  Plaintiff's generalized challenge to the composition of the Board fails to state a cognizable civil rights claim.

VII.  LEAVE TO AMEND

In light of the above deficiencies, the amended complaint must be dismissed.  It is unclear whether plaintiff can state a cognizable civil rights claim.  However, in an abundance of caution the Court will grant leave to file a second amended complaint.  If plaintiff chooses to file a second amended complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's federal constitutional or statutory rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  Also, the second amended complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Duffy, 588 F.2d at 743.  Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient.  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

An amended complaint must be complete in itself without reference to any prior pleading.  Local Rule 220; See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation omitted)).  Once plaintiff files an amended complaint, the original or prior pleading is superseded and treated as non-existent.  See Ramirez, 806 F.3d at 1008.

VIII.  CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's amended complaint is dismissed; and

2. Plaintiff is granted thirty days from the date of service of this order to file a second amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the second amended complaint must bear the docket number assigned this case and must be labeled "Second Amended Complaint"; plaintiff must file an original and two copies of the second amended complaint; failure to file a second

amended complaint in accordance with this order will result in a recommendation that this action be dismissed.

Dated: September 15, 2025

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/lapo2808.14amd

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LAPONTE,<br><br>          Plaintiff,<br><br>     v.<br><br>GAVIN NEWSOM, et al.,<br><br>          Defendants. | No.  2:24-cv-2808 CSK P<br><br><br>NOTICE OF AMENDMENT |

   Plaintiff submits the following document in compliance with the court's order filed on _____ (date).

☐     Second Amended Complaint
      (Check this box if submitting a Second Amended Complaint)

DATED:

                              _____
                              Plaintiff

1